Merle Joy Turchik, SBA #01130
**TURCHIK LAW FIRM, P.C.**
2205 E. Speedway Blvd.
Tucson, AZ 85719
Telephone: (520) 882-7070
merle@turchiklawfirm.com

Daniel Bonnett, SBA # 014127
Ravi Patel, SBA # 030184
**MARTIN & BONNETT, P.L.L.C**
1850 N. Central Ave., Ste.2010
Phoenix, AZ 85004
Telephone: (602) 240-6900
dbonnett@martinbonnett.com
rpatel@martinbonnett.com

Attorneys for:  **Plaintiffs**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **LORRAINE SHAW,** a single woman**;** **MICHELLE CURTIS,** a single woman; **CRYSTAL DIAZ,** a single woman; on behalf of themselves individually, and on behalf of a class of others similarly situated. <br><br> Plaintiffs, <br><br> vs. <br><br> **TERRACE MANAGEMENT, LLC,** an Arizona limited liability company, **HF CONSULTING LLC**, an Arizona limited liability company, **PHX SC MANAGEMENT, INC**., an Arizona corporation; **THE HF SAUNDERS, CO., LLC,** an Arizona limited liability company, and **ABC ENTITIES 1-20**, all dba Supercuts; **ROCHELLE CARR** and **GERRIE CARR,** wife and husband; **MICHAEL HANSON** and **CHRISTINE HANSON**, husband and wife; **RANDAL DIX** and **HEATHER DIX**, husband and wife, **JOHN AND JANE DOES 1-20**. <br><br> Defendants. | CASE NO.: <br><br> **COLLECTIVE AND CLASS ACTION LAWSUIT** <br><br> Fair Labor Standards Act, 29 U.S.C. §201, *et seq*. <br><br> Arizona Wage Act, ARIZ. REV. STAT. ANN. § 23-350, *et seq*. <br><br> **(JURY TRIAL DEMANDED)** |

Plaintiffs Lorraine Shaw, Michelle Curtis and Crystal Diaz, on behalf of themselves individually, and on behalf of a class of all other similarly situated current and former employees of Defendants' entities doing business as "Supercuts," collectively ("Plaintiffs), allege as follows:

## JURISDICTION AND VENUE

1.     This is an action to recover wages and damages from Defendants for their unlawful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; and the Arizona wage statute, A.R.S. § 23-350, *et seq.*

2.     As this matter arises, *inter alia*, under federal statute, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

3.     This Court also has supplemental jurisdiction over the state law claims raised in this action pursuant to 28 U.S.C. § 1367 because such claims do not raise novel or complex issues of state law and because those claims derive from a common nucleus of operative facts from which the FLSA claims in this action derive.

4.     The Plaintiffs are current and former employees of Defendants Michael Hanson, Randal Dix, Rochelle Carr and their respective companies, Terrace Management, LLC; HF Consulting LLC; PHX SC Management Inc., and The HF Saunders, Co., LLC, all doing business as Supercuts (hereinafter collectively referred to as "Defendants" or "Supercuts").

5.     As provided for under the FLSA, 29 U.S.C. § 216(b), this action is brought by each Plaintiff individually and as a collective action on behalf of all current and former similarly-situated employees of Defendants' Supercuts to recover wages,

overtime wages, liquidated damages, attorneys' fees and other statutory penalties resulting from Defendants' violations of the FLSA.

6.      As permitted by Federal Rule of Civil Procedure 23, this action is also brought as a class action to recover unpaid and overtime wages, treble damages, attorneys' fees and any other statutory penalties resulting from Defendants' violations of the Arizona wage statutes.

7.      Defendants are covered employers and enterprises subject to the FLSA because they are involved in interstate commerce and, upon information and belief, generate annual revenue in excess of $500,000, and are employers under Arizona law.

8.      During the relevant period, Plaintiffs were employees of Defendants covered by the provisions and protections contained in the FLSA and under Arizona wage statutes.

9.      Defendants transact and conduct business within the State of Arizona, operating retail beauty salons that offer hair care services and sell beauty and hair care consumer goods.

10.     Venue lies properly within this Court under 28 U.S.C. § 1391(b)(1) & (c) because most or all of the acts alleged occurred within the geographic region covered by this District in the State of Arizona and Defendants conduct significant business operations within this District.

**THE PARTIES**

11.     Each Plaintiff is an individual who works or has worked for Defendants as a Stylist, a Key Holder, and/or a Shift Manager, also known as a Shift Manager (hereinafter

referred to as a "Shift Manager"), in Arizona within the three years preceding the filing of their Consent to Join as an opt-in plaintiff.

12.     Plaintiff Lorraine Shaw ("Shaw") was employed by Defendants doing business as Supercuts at Arizona locations from December 3, 2013 to August 10, 2015, as more particularly described herein.

13.     Plaintiff Crystal Diaz ("Diaz") was employed by Defendants doing business as Supercuts at Arizona locations from 2010 to April, 2014, as more particularly described herein.

14.     Plaintiff Michelle Curtis ("Curtis") has been and remains employed by Defendants doing business as Supercuts at Arizona locations since October 17, 2014, and continues to work for Defendants doing business as Supercuts at Arizona locations as more particularly described herein.

15.     Defendant Terrace Management LLC., is an Arizona for-profit limited liability company doing and transacting business as "Supercuts" in the State of Arizona.

16.     Defendant HF Consulting, LLC, is an Arizona for-profit limited liability company doing and transacting business as "Supercuts" in the State of Arizona.

17.     Defendant PHX SC Management, Inc. is an Arizona for-profit corporation doing and transacting business as "Supercuts" in the State of Arizona.

18.     Defendant The HF Saunders, Co., LLC, is an Arizona for-profit limited liability company doing and transacting business as "Supercuts" in the State of Arizona.

19.     Throughout the relevant time period, Defendant Rochelle Carr, is, and has been, the Director of Operations for all of Defendants' businesses doing and transacting

business as "Supercuts" in the State of Arizona. She is, and was, Vice President of Defendant PHX SC Management, Inc. Upon information, Defendant Carr has been and remains a decision-maker regarding hours worked and wages paid to Plaintiffs as more particularly set forth herein.

20.     Throughout the relevant time period, Defendant Michael Hanson is, and has been, a Manager of The HF Saunders, Co., LLC.  Upon information, Defendant Hanson has been and remains a decision-maker regarding hours worked and wages paid to Plaintiffs as more particularly set forth herein.

21.     Throughout the relevant time period, Defendant Randal Dix is, and has been, a Manager of Defendant Terrace Management, LLC, and a Manager of HF Consulting, LLC. Upon information, Defendant Dix has been and remains a decision-maker regarding hours worked and wages paid to Plaintiffs as more particularly set forth herein.

22.     Upon information and belief, Defendants Terrace Management LLC, HF Consulting LLC, PHX SC Management, Inc., and The HF Saunders Co., LLC, own and operate approximately 28 Supercuts locations throughout Arizona.

23.     ABC Entities 1-20 and John and Jane Does 1-20 are fictitiously-identified Defendants whose true names and legal capacities are presently unknown.  Leave of Court is requested to substitute the true names of such Defendants when discovered.

24.     At all times relevant, all Defendants were and/or are joint employers of each Plaintiff for purposes of this action. Defendants' retail stores owned, operated or doing

business as Supercuts within the State of Arizona, exist for the common business purpose of retailing hair care consumer goods and services.

### COLLECTIVE AND CLASS ACTION ALLEGATIONS

25.     Count One asserted below is properly maintainable as a collective action under 29 U.SC. § 216(b).

26.     Count Two is properly maintainable as a class action under Federal Rule of Civil Procedure 23.

27.     For collective action purposes under Count One, the proposed FLSA collective action class includes:

> All current and former Stylists, Key Holders, and Shift Managers employed by Defendants and who worked at any of Defendants' Supercuts store locations in the State of Arizona on or after January 29, 2013 and were not paid overtime at the required rates of pay under federal law.

28.     For class action purposes, under Count Two, a Rule 23 Subclass is proposed which includes:

> All current and former Stylists, Key Holders, and Shift Managers employed by Defendants and who worked at any of Defendants' Supercuts store locations in Arizona on or after January 29, 2015, and were not paid all "wages" due as required by Ariz. Rev. Stat. § 23-351 *et seq.*

29.     The proposed Class and Subclass Members are so numerous that joinder of all members is impracticable. Upon information and belief, there are several hundred members of the proposed Class throughout Arizona.

30.     There are questions of law and fact common to each class that predominate

over any questions solely affecting individual members of each class, including but not limited to:

a.      Whether one, both, or all Defendants are or were Plaintiffs' employers;

b.      Whether one or more Defendants failed to pay Plaintiffs appropriate overtime for all hours worked in excess of forty hours per week;

c.      Whether one or more Defendants failed to pay Plaintiffs required wages in violation of state and common law;

d.      The nature and extent of Plaintiffs' and Class Members' injuries and the appropriate measure of damages for each Class.

31.     The claims of Plaintiffs are typical of the claims of each Class they seek to represent.  Plaintiffs and Class Members work or have worked for Defendants and have been subjected to common practices and policies of failing to pay all wages and overtime owed.

32.     Defendants acted or refused to act on grounds generally applicable to the Class Members as a whole by engaging the same violations of law with respect to the Class Members, thereby making any final relief appropriate with respect to the Class as a whole.

33.     Plaintiffs will fairly and adequately represent and protect the interests of the Class and each Subclass.

34.     Plaintiffs have retained counsel competent and experienced in complex wage and hour litigation and class and collective action litigation.

35.     The Class Members have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedures.

36.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation, particularly in the context of wage litigation such as the instant case where individual workers lack the financial resources to vigorously prosecute a lawsuit in federal court.

37.     Furthermore, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

## COMMON FACTUAL ALLEGATIONS

38.     Upon information and belief, during the periods of employment for each Plaintiff, Defendants maintained common policies regarding pay practices and procedures of Stylists, Key Holders, and Shift Managers at Defendants' Supercuts store locations that each Plaintiff was expected to follow.

39.     By way of example, Defendants instructed Store Managers that their primary role required them to "ensure the store's profitability" and that the primary role of the Shift Managers was "to support the manager and manage the store to be successful."

40.     Defendants required Plaintiffs to sign an "Attendance Requirement" mandating that Stylists, and Key Holders report to work at least 15 minutes prior to the start of their scheduled shifts; and mandating that Shift Managers who were opening the store at least 30 minutes prior to their start time or face disciplinary action.

41.     These and other corporate policies of Defendants resulted in Plaintiffs and Class Members being required to perform duties off-the-clock for which they were and are not properly paid under federal and state law.

42.     At times relevant to this action, Defendants have suffered or permitted each Plaintiff, as a Stylist, Key Holder, and/or Shift Manager, to regularly perform the following duties off-the-clock and without compensation, including, but not limited to, the following: (a) requiring their arrival at least 15 minutes (30 minutes for Shift Managers opening a store) prior to scheduled shift; (b) preparing and setting up individual work stations and store locations prior to opening; (c) prohibiting clocking-in until a customer arrives at the store; (d) stocking merchandise onto the shelves, (e) facing or straightening merchandise on the shelves, and completing various manual tasks relating to inventory; (f) traveling from one store location to another; (g) being required to clock-out while a customer's hair coloring is processing; (h) setting or turning off store alarm and opening or locking safe; (i) traveling to banks to make store deposits; (j) laundering and folding towels; (k) sweeping and mopping floors; (l) cleaning and putting away combs and other styling implements; (m) cleaning and resupplying work stations at the end of day; (n) attending mandatory training sessions (other than for recertification); (o) attending mandatory meetings that exceeded the one hour of allotted compensation; (p) opening and closing the store locations; and (q) completing end-of-day paperwork.

43.     Each Plaintiff commonly works or has worked more than forty (40) hours per week performing FLSA non-exempt physical labor as set forth herein.

44.     Defendants have not compensated Plaintiffs with one and one-half times their regular rate of pay for all hours worked in excess of forty (40) each week.

45.     Defendants have not timely compensated Plaintiffs for all wages due them under Arizona law for all hours worked.

46.     Alternatively, and by virtue of the foregoing allegations, there are questions of fact and law common to and among the named Plaintiffs so as to make joinder of the named-Plaintiffs permissible pursuant to *Fed. R. Civ. P.* 20(a)(1) if class and/or collective action is not granted by the Court.

## **FACTUAL ALLEGATIONS RE: PLAINTIFF SHAW**

47.     Plaintiff Shaw was employed by Defendants' Arizona Pavilions Supercuts store at 5960 W. Arizona Pavilions Dr., in Tucson, AZ, from December 3, 2013 to August 10, 2015, at the rates of pay and in the positions as indicated:

a.      From on or about December 3, 2013, to on or about January 5, 2015, as a Stylist performing duties of a cosmetologist consisting of, but not limited to, giving haircuts; styling hair; applying color hair dye; waxing customers' eyebrows and facial hair; cleaning shelves; traveling to other store locations when needed; sweeping and mopping floors; stocking hair product inventory; cleaning and putting away combs and other styling implements; attending mandatory training sessions and meetings during an average workweek consisting of not less than 45 hours of work at the rate of pay of $8.50 per hour.

b.      From on or about January 6, 2015 to May 5, 2015, as a Stylist performing as a Stylist performing duties of a cosmetologist consisting of, but not limited to, giving

haircuts; styling hair; applying color hair dye; waxing customers' eyebrows and facial hair; cleaning shelves; traveling to other store locations when needed; sweeping and mopping floors; stocking hair product inventory; cleaning and putting away combs and other styling implements; attending mandatory training sessions and meetings during an average workweek consisting of not less than 45 hours of work at the rate of pay of $8.65 per hour.

   c. From on or about May 6, 2015, to on or about August 10, 2015 as a Key Holder performing duties consisting of, but not limited to, all of the duties of a Stylist as well as setting or turning off store alarm and opening or locking safe; counting money drawers; completing necessary paperwork; and traveling to banks to make store deposits during an average workweek consisting of not less than 45 hours per week at the rate of pay of $9.00 per hour.

   d. Throughout Plaintiff Shaw's employment as a Stylist and a Key Holder, Plaintiff Shaw was required to perform the following duties off-the-clock without compensation: arriving at least 15 minutes prior to preparing individual work stations and store locations prior to opening; waiting to clock in until a customer arrived at the store; stocking merchandise onto the shelves, facing or straightening merchandise on the shelves, and completing various tasks and instructions from the Store Manager; traveling from one store location to another when needed; being required to clock out while a customer's hair coloring was processing; laundering towels; sweeping and mopping floors; cleaning and putting away combs and other styling implements; setting or turning off store alarm and opening or locking safe; traveling to banks to make store deposits and

cleaning work stations at the end of day; attending mandatory training sessions (other than for recertification); attending mandatory meetings that exceeded the one hour of allotted compensation; and completing end-of-day paperwork.

48.    Plaintiff Shaw preliminarily calculates that she has been underpaid for the hours she has worked in an amount of no less than EIGHT THOUSAND FOUR HUNDRED TWENTY- SIX DOLLARS ($8426.00) excluding prejudgment interest, liquidated and treble damages.

49.    Defendants' acts and omissions as to Plaintiff Shaw were willful and intentional because Defendants had actual and constructive knowledge that she was a non-exempt employee working in excess of forty hours in each of the weeks as stated and was not receiving premium pay at the appropriate rate of pay for all hours worked in excess of forty in each of the weeks as alleged herein.

50.    Defendants' acts and omissions as to Plaintiff Shaw were willful and intentional because Defendants had actual and constructive knowledge that she was not being timely paid for all hours worked in each of the weeks as alleged herein.

### FACTUAL ALLEGATIONS RE: PLAINTIFF DIAZ

51.    Plaintiff Diaz was employed by Defendants' Supercuts store at 1655 W. Valencia Rd. #131 Tucson AZ 85746 from approximately September 2010 through December 2010 and at Defendants' Supercuts store at 2031 E. Irvington Rd., #113, in Tucson, AZ., from approximately December, 2010 through April, 2014, at the rates of pay and in the positions as indicated:

a.      From on or about January 1, 2012, to on or about November 2013, Plaintiff Diaz was employed as a Shift Manager performing duties including but not limited to, setting weekly and monthly goals with Stylists; opening and closing the store, opening or locking the store safe; counting money drawers; completing necessary paperwork; traveling to banks to make store deposits, as well as performing all of the cosmetologist duties of a Stylist, including but not limited to,  giving haircuts; styling hair; applying color hair dye; waxing customers' eyebrows and facial hair; cleaning shelves; sweeping and mopping floors; stocking hair product inventory; ordering hair care products; cleaning and putting away combs and other styling implements during a workweek consisting of no less than 45 hours of work at the rate of pay of $9.50 per hour.

b.      From on or November, 2013, to on or about April, 2014 Plaintiff Diaz was employed as a Stylist performing duties of a cosmetologist consisting of, but not limited to, giving haircuts; styling hair; applying color hair dye; waxing customers' eyebrows and facial hair; cleaning shelves; sweeping and mopping floors; stocking hair product inventory; and cleaning and putting away combs and other styling implements during an average workweek consisting of no less than 30 hours of work at the rate of pay of $8.50 per hour.

52.      Throughout Plaintiff Diaz's employment as a Stylist and a Shift Manager, Plaintiff Diaz was required to perform the following duties off-the-clock without compensation: arriving at least 15 minutes prior to start of a shift (at least 30 minutes when she was a Shift Manager opening a store); preparing individual work stations and store locations prior to opening; waiting to clock in until a customer arrived at the store;

stocking merchandise onto the shelves, facing or straightening merchandise on the shelves, and completing various tasks and instructions from the Store Manager; traveling from one store location to another when needed; being required to clock out while a customer's hair coloring was processing; laundering towels; sweeping and mopping floors; cleaning and putting away combs and other styling implements; traveling to banks to make store deposits; cleaning work stations at the end of day; attending mandatory training sessions (other than for recertification);   attending mandatory meetings that exceeded the one hour of allotted compensation; opening and closing the store locations; and completing end-of-day paperwork.

53.    Plaintiff Diaz preliminarily calculates that she has been underpaid for the hours she has worked in an amount of no less than TWELVE THOUSAND EIGHT HUNDRED AND TWENTY-FIVE DOLLARS ($12,825.00) excluding prejudgment interest, liquidated and treble damages.

54.    Defendants' acts and omissions as to Plaintiff Diaz were willful and intentional because Defendants had actual and constructive knowledge that she was a non-exempt employee working in excess of forty hours in each of the weeks as stated and was not receiving premium pay at the appropriate rate of pay for all hours worked in excess of forty in each of the weeks as alleged herein.

55.    Defendants' acts and omissions as to Plaintiff Diaz were willful and intentional because Defendants had actual and constructive knowledge that she was not being timely paid for all hours worked in each of the weeks as alleged herein.

….

## FACTUAL ALLEGATIONS RE: MICHELLE CURTIS

56.     Plaintiff Curtis has been employed by Defendants' Supercuts stores from October 17, 2014 to present, at the rates of pay, store locations, and in the positions as indicated:

a.     From on or about October 17, 2014 to on or about December 31, 2014, as a part-time Stylist performing duties consisting of, but not limited to, performing the duties of a cosmetologist consisting of, but not limited to, giving haircuts; styling hair; applying color hair dye; waxing customers' eyebrows and facial hair; cleaning shelves; sweeping and mopping floors; stocking hair product inventory; and cleaning and putting away combs and other styling implements during an average workweek consisting of no less than 27 hours per week at the rate of pay of $8.50 per hour at Defendants' Arizona Pavilions Supercuts store at 5960 W. Arizona Pavilions Dr., in Tucson, AZ.

b.     From on or about January 1, 2015 to on or about February, 2015, as a part-time Stylist performing duties consisting of, but not limited to, performing the duties of a cosmetologist consisting of, but not limited to, giving haircuts; styling hair; applying color hair dye; waxing customers' eyebrows and facial hair; cleaning shelves; sweeping and mopping floors; stocking hair product inventory; and cleaning and putting away combs and other styling implements during an average workweek consisting of no less than 27 hours per week at the rate of pay of $8.65 per hour at Defendants' Arizona Pavilions Supercuts store at 5960 W. Arizona Pavilions Dr., in Tucson, AZ.

c.     From on or about February, 2015 to on or about August, 2015, as a full-time Stylist performing duties consisting of, but not limited to, performing

15

cosmetology duties consisting of, but not limited to, giving haircuts; styling hair; applying color hair dye; waxing customers' eyebrows and facial hair; cleaning shelves; sweeping and mopping floors; stocking hair product inventory; and cleaning and putting away combs and other styling implements during an average workweek consisting of no less than 45 hours per week at the  rate of pay of $8.65 per hour at Defendants' Arizona Pavilions Supercuts store at 5960 W. Arizona Pavilions Dr., in Tucson, AZ.

   d. From on or about August, 2015 to November 22, 2015, as a full-time Key Holder performing duties consisting of, but not limited to, the duties of a Stylist as well as setting or turning off store alarm and opening or locking safe; counting money drawers; completing necessary paperwork; traveling to banks to make store deposits during an average workweek consisting of no less than 40 hours per week at the rate of pay of $9.00 per hour at Defendants' Arizona Pavilions Supercuts store at 5960 W. Arizona Pavilions Dr., in Tucson, AZ.

   e. From on or about November 23, 2015 to present, as a full-time Shift Manager performing duties consisting of, but not limited to, all of the duties of a Stylist as well as opening and closing the store locations; setting weekly and monthly goals with Stylists; setting or turning off store alarm, opening or locking the store safe; counting money drawers; completing necessary paperwork; traveling to banks to make store deposits during an average workweek consisting of no less than 45 hours a week at the rate of pay of $9.50 per hour at Defendants' Costco Supercuts store at 3821 W. Costco Dr. #101 in Tucson, AZ.

57.     Throughout Plaintiff Curtis' employment as a Stylist and a Shift Manager, Plaintiff Curtis was, and is, required to perform the following duties off-the-clock without compensation: arriving at least 15 minutes prior to start of a shift (at least 30 minutes when she was a Shift Manager opening a store); preparing individual work stations and store locations prior to opening; waiting to clock in until a customer arrived at the store; stocking merchandise onto the shelves, facing or straightening merchandise on the shelves, and completing various tasks and instructions from the Store Manager; traveling from one store location to another when needed; being required to clock out while a customer's hair coloring was processing; laundering towels; sweeping and mopping floors; cleaning and putting away combs and other styling implements; traveling to banks to make store deposits; cleaning work stations at the end of day; attending mandatory training sessions (other than for recertification);   attending mandatory meetings that exceeded the one hour of allotted compensation; opening and closing the store locations; and completing end-of-day paperwork.

58.     Plaintiff Curtis preliminarily calculates that she has been underpaid for the hours she has worked in an amount of no less than FIVE THOUSAND THREE HUNDRED SEVENTY-SEVEN DOLLARS ($5377.00) excluding prejudgment interest, liquidated and treble damages.

59.     Defendants' acts and omissions as to Plaintiff Curtis were willful and intentional because Defendants had actual and constructive knowledge that she was a non-exempt employee working in excess of forty hours in each of the weeks as stated and was

not receiving premium pay at the appropriate rate of pay for all hours worked in excess of forty in each of the weeks as alleged herein.

60.     Defendants' acts and omissions as to Plaintiff Curtis were willful and intentional because Defendants had actual and constructive knowledge that she was not being timely paid for all hours worked in each of the weeks as alleged herein.

**COUNT ONE**

**(Violation of the FLSA, 29 U.S.C. § 201 et seq.)**

61.     Plaintiffs repeat and re-allege all previous paragraphs of this Complaint as though fully incorporated in this section.

62.     29 U.S.C. § 207 requires employers subject to the FLSA to pay employees one and one half times their respective regular rates of pay for all hours worked in excess of forty (40) hours in a week.

63.     Defendants have failed to pay each Plaintiff and similarly situated Stylist, Key Holder and Shift Manager an overtime rate of one and one-half times their respective regular hourly rates of pay for their respective hours worked in excess of forty (40) in each one-week period.

64.     Based on the foregoing, each Plaintiff and Class Member has been damaged and seeks unpaid overtime wages at the required legal rate for all hours worked in excess of forty in each week during the relevant time period, together with liquidated damages, prejudgment interest, attorneys' fees and litigation costs and all other costs and penalties allowed by law.

….

## COUNT TWO

**(Violation of Arizona Wage Statute, A.R.S. § 23-350 et seq.)**

65.     Plaintiffs repeat and re-allege all previous paragraphs of this Amended Complaint as though fully incorporated in this section.

66.     Ariz. Rev. Stat. § 23-351 provides in relevant part:

>       A.      Each employer in this State shall designate two or more days in each month, not more than sixteen days apart, as fixed paydays for payment of wages to the employees. . .

>       C.      Each employer shall, on each of the regular paydays, pay to the employees . . . all wages due the employee up to such date. . .

>       (3)   Overtime or exception pay shall be paid no later than sixteen days after the end of the most recent pay period.

67.     Ariz. Rev. Stat. § 23-352 provides in relevant part:

>       if an employer, in violation of this chapter, fails to pay wages due any employee, the employee may recover in a civil action against an employer or former employer an amount that is treble the amount of the unpaid wages.

68.     By the acts and omissions set forth above, including by failing to timely pay all wages due to Plaintiffs and Subclass Members, Defendants have violated Arizona's Wage Act.

69.     As a result of Defendants' violations of Ariz. Rev. Stat. § 23-351 et seq., each Plaintiff and Subclass member has been harmed, has suffered substantial losses and has been deprived of compensation to which she or he was entitled and therefore is entitled to an award of the unpaid wages, with prejudgment interest thereon, and treble the amount of such wages, together with attorneys' fees and costs, pursuant to A.R.S. § 23-355.

1

## **PRAYER FOR RELIEF**

2        WHEREFORE, premises considered, Plaintiffs respectfully pray as follows:

3        A.        A declaration that Terrace Management, LLC; HF Consulting LLC; PHX

4   SC Management Inc., and The HF Saunders, Co., LLC, are and have been joint employers

5   of each Plaintiff;

6        B.        Certification of Count One as an FLSA collective action;

7        C.        Certification of Count Two as a Rule 23 class action;

8        D.        A declaration that each Defendant has willfully and intentionally failed to

9   pay each Plaintiff and each Class Member all amounts properly due and owing in

10  violation of the Fair Labor Standard Act, 29 U.S.C. § 201 *et seq.*;

11       E.        A declaration that each Defendant has willfully and intentionally failed to

12  timely pay each Plaintiff and Subclass Member all amounts properly due and owing in

13  violation of Ariz. Rev. Stat. § 23-351 *et seq.*;

14       F.        For an order entering judgment in favor of the Plaintiffs and proposed Class

15  and Subclass against Defendants, jointly and severally, for all overtime wages due each

16  Plaintiff in an amount no less than as alleged herein but to be determined by the trier of

17  fact together with additional sums for liquidated and/or treble damages under applicable

18  federal and/or state law, attorneys' fees, costs, and pre-judgment interest; and

19       G.        For such other and further relief as this Court deems necessary, just and

20  proper.

21  A JURY TRIAL IS REQUESTED ON ALL ISSUES ENUMERATED IN THE

22  COMPLAINT PURSUANT TO RULE 38 OF THE FEDERAL RUES OF CIVIL

23  PROCEDURE.

24       RESPECTFULLY SUBMITTED this 29th day of January, 2016.

25

26                              By: s/Merle Joy Turchik
                                    Merle Joy Turchik
27                                  2205 E. Speedway Blvd.
                                    Tucson, AZ 85719
28                                  (520) 882-7070

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Daniel L. Bonnett
Ravi Patel
1850 N. Central Avenue, Suite 2010
Phoenix, AZ  85004
(602) 240-6900

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 29th, 2016, I electronically transmitted the attached document to the Clerk's Office using the CM-ECF System for filing.


s/Kathy Pasley
Legal Assistant